UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

        vs.                          CRIMINAL NO. 3:26-CR-64 (OAW)

MICHAEL MEADE                      July 29, 2026

### <u>REPLY BRIEF IN FURTHER SUPPORT OF MEADE'S APPEAL (ECF NO. 89)</u>

Michael Meade, through counsel, replies in support of his appeal (ECF No. 89). This Court should reverse Judge Vatti's decision, denying his request to proceed *pro se*, for three reasons.

First, Judge Vatti did not think he could find a valid waiver unless he gave a thorough advisement in which Mr. Meade participated. However, *Faretta v. California*, 422 U.S. 806 (1975), and later binding precedent, confirm a thorough advisement is not a prerequisite to a valid waiver. Thus, one error requiring reversal was Judge Vatti's singular focus on the *Faretta* inquiry, and his failure to instead consider whether the totality of the circumstances supported a valid waiver.

Second, Judge Vatti mistakenly thought an "on-the-record discussion," of the sort encouraged in *Torres v. United States*, 140 F.3d 392 (2d. Cir. 1998), required Mr. Meade to answer him. But the parties agree Judge Vatti's advisement was extremely thorough, and *Torres* does not require a defendant to answer to qualify as an on-the-record discussion. *See* ECF No. 95 at 7–8.

Third, the Second Circuit already found in *Torres* that extremely similar facts constituted a valid waiver of the right to counsel. That decision is binding on this Court.

A.    *<u>Judge Vatti viewed his lengthy advisement as a constitutional prerequisite and failed to consider the proper standard which looks to the totality of the circumstances.</u>*

Judge Vatti mistakenly concluded that a lengthy advisement about the dangers of self-representation, followed by a long list of questions for Mr. Meade to answer, was a prerequisite to

finding Mr. Meade had intelligently waived his right to counsel.  Judge Vatti thus failed to answer the right question: whether the totality of the circumstances supported a valid waiver.

In *Faretta*, the Supreme Court found a valid waiver where the trial court only advised "he thought it was a mistake not to accept the assistance of counsel," and told the defendant he would need to follow the "ground rules of trial procedure."  422 U.S. at 835.  Because Faretta "clearly" wanted to represent himself, the record showed he "kn[ew] what he [wa]s doing and his choice [wa]s made with eyes open."  *Id.* at 835–36.

Meanwhile, in *Torres*, the Second Circuit found a judge "*should* engage the defendant in an on-the-record discussion" but ultimately "must be satisfied" the defendant is "aware of the risks" and the choice is "made with eyes open."  140 F.3d at 401 (quotation omitted).  Four years later in *Dallio v. Spitzer*, the Second Circuit clarified the word "should" is a recommendation, not a "legal mandate."  343 F.3d 553, 562 (2d Cir. 2003).  Thus, while a "waiver of the right to counsel [must] be knowing and intelligent," it was *not* clearly established that a court must always "warn a defendant of the dangers and disadvantages of proceeding *pro se*."  *Id.* at 561.  The Court instead framed the inquiry as one based on the "totality of the circumstances" including the defendant's "education, family, employment history, general conduct, and any other relevant circumstances."  *Id.* at 563.  The Court refused to set aside a conviction where the trial judge gave *no advisement* to the defendant before letting him proceed *pro se.  See id.* at 556–57.  Later in *Hausa*, the Second Circuit confirmed the validity of a waiver "depends upon the particular facts and circumstances of the case and characteristics of the defendant."  922 F.3d 129, 135 (2d Cir. 2019).

Judge Vatti mistakenly believed he could not find a valid waiver without a lengthy *Faretta* colloquy in which Mr. Meade participated.  He made multiple statements to that effect, including on May 8th: "I'm going to make a finding that … Mr. Meade does not intend to engage with the Court.

Therefore, the Court cannot conduct the *Faretta* colloquy. Therefore, the Court cannot make any finding that there's been a knowing and intelligent waiver of the right to counsel." Ex. 5 at 5.[1] Judge Vatti also said on June 1st: "I'm also going to explain to you the types of questions that I will need to ask you in order for me to make a finding." Ex. 7 at 6. He concluded with: "[W]e're going to keep doing this"—referring to his attempts to have Mr. Meade answer him—"until I'm satisfied that I can make a finding that's going to withstand scrutiny." *Id.* at 26–27.

As his docket order confirms (ECF No. 79), Judge Vatti was singularly focused on the *Faretta* inquiry. At no point did he ever frame the question as whether the totality of the circumstances showed Mr. Meade had intelligently waived his right to counsel. Thus, despite the Government's assertion to the contrary (ECF No. 95 at 8), precisely because Judge Vatti thought a back-and-forth dialogue with Mr. Meade was a constitutional prerequisite, he cut his analysis short and failed to consider whether the totality of the circumstances supported a valid waiver.

For instance, even where Judge Vatti considered certain facts about Mr. Meade's background in his order, it was only to establish Mr. Meade was capable of answering his questions, not that he was capable of understanding the court's advisement so that he would appreciate the risks of self-representation. *See* ECF No. 79 (Relying on bail report information only to conclude that "it is abundantly clear to the Court that Mr. Meade is fully capable of engaging with the Court but has deliberately chosen to make it impossible for the Court to conduct the *Faretta* inquiry."). Thus, Judge Vatti did not actually consider these facts to answer the *right* question, which is whether Mr. Meade was able to understand the court's advisement, which he clearly was.

---

[1] The exhibits as referenced correspond to the exhibits at ECF No. 89 (Exhibits 2-8) and ECF No. 91 (Exhibit 1).

Judge Vatti also failed to consider the proceedings before Judge Garcia, where Mr. Meade made his desire to proceed *pro se* known; spoke on the record at length; and answered all of the court's questions—showing a clear ability to understand and follow the court's later advisement.

Judge Vatti also failed to consider the representations by undersigned counsel that at least four times Mr. Meade confirmed with counsel his desire to proceed *pro se*. *See* ECF No. 79 (at the third paragraph, Judge Vatti only citing counsel's remarks that he was not concerned about Mr. Meade's competency); *see also* ECF No. 89 at 15–16 (pointing to representations in the record and citing *Dallio* and *Torres* for the position that counsel's representations are part of the record).

Judge Vatti also did not consider the Government's comments from May 11th: "so the record is abundantly clear. The Government has no concerns and no reason to believe that Mr. Meade is incompetent or is suffering from any sort of mental issue that prevents him from representing himself, and at the appropriate time, we're happy to elaborate further on why we come to that conclusion." Ex. 6 at 8. The Government also said: "Although [Mr. Meade's] looking directly, straight ahead, he seems to be following along with what's going on." *Id.* at 13. The Government clearly has information that it has strategically chosen not to share that has informed its opinion about Meade's intelligence and comprehension of the proceedings. The Government's proffer was also part of the record, which Judge Vatti was required to consider, and did not.

Finally, as his docket order reflects (ECF No. 79), Judge Vatti did not consider his findings from the June 1st hearing: "It is clear to me … that [Mr. Meade] clearly understands the English language and is clearly capable of understanding and has understood everything that the Court has said, both in the two prior hearings as well as today's hearing." Ex. 7 at 7. Nor did he consider that, after explaining in painstaking detail the many benefits to having a lawyer (*id.* at 7–12), he also found: "[Mr. Meade's] a very intelligent individual based on his educational background and his

4

work history.  I have no doubt that he understood what those questions are"—referring to his earlier advisement, which included a list of questions he wanted Mr. Meade to answer.  *Id.* at 26.

Ultimately, Judge Vatti mistakenly concluded a lengthy advisement, with Mr. Meade's participation, was a prerequisite to a valid waiver; thus, Judge Vatti failed to consider whether the totality of the circumstances, based on the entire record, supported a valid waiver.

      B.        *<u>Judge Vatti mistakenly thought, contrary to law, that an "on-the-record discussion"</u>* *<u>required Mr. Meade to answer his questions.</u>*

In an effort to follow best practices, Judge Vatti clearly thought an "on-the-record discussion" meant Mr. Meade needed to participate and answer the court's questions.  *Torres*, 140 F.3d at 401.  For instance, Judge Vatti said on May 8th: "If [Mr. Meade] chooses not to engage with the Court, then there's just simply no way I can conduct the colloquy required by *Faretta* in order to make a finding." Ex. 5 at 4; *see also id.* at 5; Ex. 6 at 5; Ex. 7 at 6, 13.  In his written order, he said: "[T]he Court twice asked Mr. Meade if he would engage in the *Faretta* inquiry with the Court.  On both occasions, Mr. Meade refused answer, remained silent, and refused to look at the Court."  ECF No. 79.  He concluded: "Mr. Meade has prevented the Court from assessing his purported desire to waive his right to counsel by refusing to answer any questions."  *Id.*

Were there any doubt, and there is not, the Government concedes Judge Vatti "sought to get sufficient information in the form of answers to various questions" and "**there had to be participation in some form** so the Court could make a determination."  ECF No. 95 at 8–9.

Judge Vatti's belief that an "on-the-record discussion" required Mr. Meade to answer him during the *Faretta* canvass was incorrect in light of *Torres*.  140 F.3d at 401.  In that case, the Second Circuit deemed the following events an on-the-record discussion: 1) the defendant Torres spoke on the record at her arraignment saying she wanted to represent herself; 2) the court brought her back to give a lengthier advisement, at which time she refused to answer the court's questions;

5

refused to acknowledge the court's authority; and generally refused to participate. *Id.* at 396. After giving a lengthier advisement, the trial court concluded Torres was an "intelligent woman" based on her participation "the last time" and was therefore able to understand the court's warning. *Id.* In other words, the facts underlying *Torres* clarify what the Second Circuit meant by an on-the-record discussion: so long as the defendant has engaged with the court at some point prior—reassuring the court of his or her ability to follow and understand—a defendant is not obligated to answer questions during the actual *Faretta* canvas in order to waive the right to counsel. That is a clear holding from *Torres* that the Government cannot sidestep.

Because Judge Vatti incorrectly viewed the *Faretta* canvas as requiring a two-way discussion, he failed to appreciate that 1) Mr. Meade's background and characteristics; 2) his prior statements to probation; 3) his statements to undersigned counsel; 4) **his prior statements to Judge Garcia on the record at multiple hearings**; and 5) the Government's own conclusions about Mr. Meade's intelligence based on external evidence it strategically chose not to share—collectively showed he was able to follow the court's advisement. None of these facts were considered for this purpose at the hearings and were not mentioned in his docket order at ECF No. 79.

C.    *The factual similarities between Torres and this case require reversal.*

This case falls squarely in the heartland of *Torres*. Given their factual similarities, the Second Circuit's holding that certain facts constituted a valid waiver is binding here:

| | Facts in *Torres* | Facts Here |
|---|---|---|
| 1. | No record regarding Torres' statements, if any, to probation prior to her arraignment. | Mr. Meade told probation he wanted to represent himself (*See* Ex. 1, ECF No. 91); gave full interview; and probation did not raise any concerns about intelligence or competence. |
| 2. | No record regarding Torres' background and personal characteristics | Thorough record about Mr. Meade's background and characteristics, due to his interview with probation, which was |

6

| | | independently corroborated by his wife and the government. |
|---|---|---|
| 3. | Torres spoke at her arraignment, where she identified as a "prisoner of war" and "refused to recognize the court's authority." 140 F.3d at 395-96 | Mr. Meade spoke extensively and intelligently at the first two hearings, and shared his political belief that he has "no joinder with this court" Ex. 3 at 2. |
| 4. | Torres had a back-and-forth dialogue with the court at her arraignment and said: "I'm here representing myself and I don't need attorneys." *Id.* at 396. | Mr. Meade did the same thing: spoke at length, answered each of the court's questions, reiterated his desire to proceed *pro se*, and objected at every opportunity to undersigned counsel being appointed his lawyer.  *See* Summary at ECF No. 89 at 1–4. |
| 5. | Torres said at her arraignment: "I'm not going to participate in your so-called trial or, you know, circus, charade, whatever you want to call it."  *Id.* at 396. | Mr. Meade at times made similar comments, referring to Judge Garcia and other courtroom personnel as "actors" and saying he has no "joinder with this Court."  ECF No. 89 at 3. |
| 6. | Torres refused to enter plea, so court entered plea of not guilty on her behalf. *See id.* at 396. | Mr. Meade also remained silent, leading the court to enter a plea of not guilty on his behalf. |
| 7. | Court brought Torres back to give a lengthier advisement, at which time she did not "say anything" to the court and was "unwilling[] to participate."  *Id.* at 396 | The same occurred here. |
| 8. | Government requested appointment of counsel given unwillingness to participate. *Id.* at 396. | Government requested appointment but proffered, based on external evidence, it had "no concerns" about Mr. Meade's competency and ability to follow the proceedings |
| 9. | The court found Torres was "intelligent" based on their discussion the "last time." *Id.* at 396. | Judge Vatti made same findings, before and after he gave his advisement.  *See* ECF No. 89 at 7–9; *see also* ECF No. 62. |
| 10. | Court confirmed with unofficial advisor that she had advised Ms. Torres about her rights.  *See id.* at 396. | Undersigned counsel repeatedly confirmed that he had discussed the risks with Mr. Meade. ECF No. 89 at 6–8. |
| 11. | No evidence in the record Torres confirmed with her unofficial advisors off the record that she still wanted to go *pro se* | Undersigned counsel makes representation that Mr. Meade conveyed multiple times off the record that he wanted to proceed *pro se.* ECF No. 89 at 6–8. |
| 12. | When asked to speak at the second hearing, Torres said she was a "prisoner of war" and "refused to recognize the court's authority."  *Id.* | Mr. Meade remained silent at later hearings, which is constitutionally protected. |
| 13. | Court's advisement was limited and "could have been more thorough." | Here, by contrast, all parties agree Judge Vatti gave an extensive advisement that occurred over multiple hearings. |

7

| 14. | Court concludes Torres' waiver was "knowing and intelligent." *Id.* at 401. | Court should have also found so here. |
| 15. | Court finds Torres' "decision not to participate in the proceedings did not undermine her … waiver," as it was a "fully informed, politically motivated choice." *Id.* at 402–03. | Court should have also found so here. |

In sum, the facts in this case closely track those that were relied upon in *Torres* to find a valid waiver.  What's more, where there is any difference between them—for instance at Items 1, 2, 8, 11, 12 & 13—it only cuts in favor of there being a stronger record for a waiver here.

Despite *Torres*' obvious closeness to this case, the Government tries to place Mr. Meade in the *Hausa* camp, by characterizing some of his statements as "incomprehensible."  ECF No. 95 at 12.  The Government is fully aware these comments were sovereign citizen rhetoric.  The Government said as much on May 8:

> In the first court appearance, he responded to the Court. He told the Court how old he was, education level, so this is new in terms of his response. So it's indicative—the colons and references to colons and punctuations and capitalization, is something indicative from the Government's view of sovereign citizens.

Ex. 5 at 7.  The Government again acknowledged its belief that Mr. Meade subscribed to sovereign citizen beliefs.  *See* Ex. 7 at 20–22 ("he's conveniently cloaking himself in the sovereign citizen rhetoric").  Moreover, unlike Hausa, where his competency was immediately questioned by everyone including his own lawyer (922 F.3d at 133), the Government said about Mr. Meade: "[S]o the record is abundantly clear. The Government has no concerns and no reason to believe that Mr. Meade is incompetent or is suffering from any sort of mental issue that prevents him from representing himself, and at the appropriate time, we're happy to elaborate further on why we come to that conclusion."  Ex. 6 at 8.  The Government cannot now walk its statements back.

As the record shows, neither the Government nor Judge Vatti actually thought Mr. Meade's statements reflected the "incomprehensible" ramblings of a crazy person.  Judge Vatti also correctly

identified it as sovereign citizen rhetoric. *See* Ex. 6 at 11 (noting that Mr. Meade "has some of the same philosophical views about sovereign citizenship" as his co-defendant West); *see also* Ex. 7 at 11 (reminding Mr. Meade that his co-defendant "appears to want to advance the same defenses that [he] wish[es] to advance, including theories of being a sovereign citizen").

Ultimately, Judge Vatti made several, critical findings at the June 1st hearing. First, that Mr. Meade "clearly understands the English language and is clearly capable of understanding and has understood everything that the Court has said, both in the two prior hearings as well as today's hearing." Ex. 7 at 7. Second: "I have no doubt that [Mr. Meade] understood what those questions are"—referring to his earlier advisement. *Id.* at 26. His docket order from June 1 confirms:

> [T]he Court believes that defendant Meade is intelligent, articulate and understands English. It is obvious to the Court that Mr. Meade heard the Court's explanation of the purpose of a *Faretta* hearing and the intended nature of the Court's inquiry. **The Court also described in detail the benefits of having counsel and the disadvantages of self-representation.** The Court also described in detail the specific questions that comprise the Faretta inquiry. **It is obvious to the Court that defendant Meade heard the Court's description.**

ECF No. 62 (emphasis added).[23] Once Judge Vatti made this finding, that should have been it.

---

[2] The Government's mention of Mr. Meade refusing to take documents back to Wyatt is a red herring. *See* ECF No. 95 at 6–7. First, Judge Vatti did not just ask Mr. Meade to take the documents back; he asked him to review the questions in the documents, so that he would be prepared to answer Judge Vatti on the record at the next date. So it is really just another form or iteration of Judge Vatti asking Mr. Meade to answer his questions. Regardless, Judge Vatti had already found, as of June 1st, that Mr. Meade understood his entire advisement about the dangers of self-representation. At this point, Judge Vatti overlooked the fact he had made all of the requisite findings to conclude Mr. Meade had knowingly waived his right to counsel. Hence, Mr. Meade's decision to not take the documents at a later court date did not prevent the Court from finding anything.

[3] Judge Vatti was therefore mistaken when he later found on June 18th that Mr. Meade had "not made any gestures or facial expressions or exhibited any body language in any of the five hearings from which the Court can infer that he absorbed or understood the Faretta advisory." ECF No. 79. That finding is inconsistent with his earlier findings; thus, the record supports Judge Vatti overlooked his prior findings from June 1st. In addition, as the overall record reflects, Judge Vatti's focus on Mr. Meade's lack of eye contact at later hearings was, respectfully, making a mountain out of a molehill. The lack of eye contact only confirms what was and should have been obvious: which is that Mr. Meade was not going to speak. Again, given the entire record, Mr. Meade's later silence (and lack of eye contact) did not prevent the court from finding a valid waiver. *See Torres*, 140 F.3d at 396, 401.

9

Because the Government agrees Judge Vatti gave an extremely thorough advisement (ECF No. 95 at 4, 7–8), and because Judge Vatti found Mr. Meade understood this advisement, *Torres* required Judge Vatti to find Mr. Meade had knowingly and intelligently waived his right to counsel.

For these reasons, this Court should reverse Judge Vatti's decision.

Respectfully submitted,

THE DEFENDANT,
Michael Meade

OFFICE OF THE FEDERAL DEFENDER

Dated: July 29, 2026

*/s/ Daniel M. Erwin*
Daniel M. Erwin
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct28947
Email: Daniel_Erwin@fd.org

*/s/ Phoebe Bodurtha*
Phoebe Bodurtha
Research and Writing Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 28, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Daniel M. Erwin*
Daniel M. Erwin

10